## S11A1929. CHEDDERSINGH v. THE STATE.
(724 SE2d 366)

HINES, Justice.

Soniel D. Cheddersingh appeals his conviction for the malice murder of Michael Walker, Jr., as well as his convictions for aggravated assault, armed robbery, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.[1] For the reasons that follow, we reverse.

---

[1] Walker was killed on March 1, 2007. On August 31, 2007, a Fulton County grand jury indicted Cheddersingh for malice murder, felony murder while in the commission of aggravated assault, felony murder while in the commission of possession of a firearm by a convicted felon, the aggravated assault of Walker, the aggravated assault of Anthony Mack, Jr., the armed robbery of Mack, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Cheddersingh was tried before a jury August 11-14, 2008, and found guilty of all charges. On August 14, 2008, the trial court sentenced Cheddersingh to life in prison for malice murder, and consecutive terms of life in prison for armed robbery, 20 years for the aggravated assault of Mack, and five years for possession of a firearm by a convicted felon; the guilty verdicts for felony murder and the aggravated assault of Walker either merged with the malice murder or were vacated by operation of law. *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Cheddersingh moved for a new trial on August 27, 2008, and amended the motion on November 22, 2010, and again on March 25, 2011. The motion, as amended, was denied on May 23, 2011, and Cheddersingh filed a notice of appeal on June 17, 2011; his appeal was docketed in this Court for the September 2011 term, and submitted for decision on the briefs.

Construed to support the verdicts, the evidence showed that Walker and his cousin, Anthony Mack, Jr., were at the house of a friend. Mack answered a knock at the door and admitted Cheddersingh. Two minutes later, two other men knocked on the door of the home and forced their way inside; one man brandished an AK-47 assault rifle. Cheddersingh produced a .32 caliber handgun. Mack was kicked to the ground, and one of the intruders demanded, "Where the money at?", and Mack replied that he had $70 upstairs. Cheddersingh shot Walker with the handgun. Mack was forced upstairs and produced the money. The individual with the AK-47 accused Mack of lying about not having more cash, shot Mack in his right-hand side, and fled. Cheddersingh demanded Mack produce more money, told him "We didn't come for nothing," shot Mack in the left side of his chest, and fled. Mack went downstairs, answered a ringing telephone, spoke with Walker's mother over the telephone, then dialed 911.

1. The evidence was sufficient to enable a rational trier of fact to find Cheddersingh guilty beyond a reasonable doubt of all the crimes of which he was convicted. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Cheddersingh contends that the preprinted verdict form used erroneously instructed the jury that in order to find him not guilty of the crimes charged, the jury had to do so beyond a reasonable doubt. We agree. Regarding Count 1, the verdict form set forth: "As to the offense of Murder (O.C.G.A. § 16-15-1), we the Jury unanimously and beyond a reasonable doubt find the Defendant _____." Under the blank space were, in smaller type, the words: "Guilty or Not Guilty." This format was replicated for each of the remaining charges. As to each charge, the jury filled in the word "Guilty." But, the wording of the verdict form required that for the jury to complete the form by filling in "Not Guilty," it would have to complete a sentence stating that it found "unanimously and beyond a reasonable doubt" that Cheddersingh was not guilty. Of course, to acquit, a jury is not required to find beyond a reasonable doubt that a defendant is not guilty; rather, the defendant comes to trial presumed to be innocent, it is the State's burden to prove the defendant's guilt beyond a reasonable doubt, and the jury is to acquit the defendant if the State does not do so. See *Tillman v. Massey,* 281 Ga. 291, 292-294 (1) (637 SE2d 720) (2006); *Bruce v. Smith,* 274 Ga. 432, 436 (3) (553 SE2d 808) (2001); *Eckman v. State,* 274 Ga. 63, 67-68 (3) (a) (548 SE2d 310) (2001); *Stansell v. State,* 270 Ga. 147, 150-151 (4) (510 SE2d 292) (1998). Specifying that a jury find that a defendant is not guilty "beyond a reasonable doubt" violates these fundamental principles.

In a criminal case, a verdict form is erroneous when

the form would mislead jurors of reasonable understanding, or the trial court erroneously instructed the jury on the presumption of innocence, the State's burden of proof, the possible verdicts that could be returned, or how the verdict should be entered on the printed form.

*Rucker v. State*, 270 Ga. 431, 435 (5) (510 SE2d 816) (1999). A preprinted verdict form is treated as part of the jury instructions which "are read and considered as a whole in determining whether there is error." *Brown v. State*, 283 Ga. 327, 330 (2) (658 SE2d 740) (2008) (Citations and punctuation omitted.). Here, the trial court's oral instructions informed the jury that the defendant was innocent until proven guilty beyond a reasonable doubt, and that the burden of proof is upon the State and never shifts to the defendant. Nonetheless, this Court has recognized that " 'the presence of . . . written instructions in the jury room . . . serve[s] to enlighten, rather than confuse, the jury.' [Cit.]" *Howard v. State*, 288 Ga. 741, 745 (3) (707 SE2d 80) (2011). When, as here, the written instructions that the jury has with it in the jury room are infirm, the expected result is not enlightenment, but confusion. Compare *Arthur v. Walker*, 285 Ga. 578, 579-580 (679 SE2d 13) (2009), in which correct written instructions were with the jury during deliberations. We conclude that the verdict form would mislead jurors of reasonable understanding as to the presumption of innocence and the proper burden of proof for the jury's consideration, *Rucker*, supra, and that this constituted error despite the inclusion of proper language elsewhere in the jury instructions when taken as a whole. See also *Laster v. State*, 276 Ga. 645, 649-650 (5) (581 SE2d 522) (2003), in which the court's instructions regarding the verdict form gave improper guidance as to completing the verdict if the jury found that the State failed to meet its burden of proof and were found to be reversible error, requiring a new trial.

However, at trial, Cheddersingh did not raise any objection to the verdict form. Thus, he failed in his duty to "inform the court of the specific objection and the grounds for such objection before the jury retire[d] to deliberate." OCGA § 17-8-58 (a).[2] Nonetheless, he argues that the verdict form constituted plain error, and that under

---

[2] In its entirety, OCGA § 17-8-58 reads:

(a) Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. Such objections shall be done outside of the jury's hearing and presence.

OCGA § 17-8-58 (b), the asserted error must therefore be reviewed. See *Sapp v. State*, 290 Ga. 247, 249-250 (2) (719 SE2d 434) (2011).

We first note that the language of OCGA § 17-8-58 refers to the jury "charge." We conclude that the statute applies not only to instructions given orally to the jury, but necessarily must apply to any written instructions given to the jury. See generally *Finley v. State*, 286 Ga. 47, 50-51 (6), (7) (685 SE2d 258) (2009). Preprinted verdict forms have been treated as a portion of the jury instructions. See *Brown v. State*, 283 Ga. 327, 330 (2) (658 SE2d 740) (2008). Use of such a form is intended to assist the jury in arriving at a lawful verdict, see *Rucker*, supra at 434-435 (5), and a party is necessarily obligated to raise any objection to such a form as set forth in OCGA § 17-8-58 (a). Accordingly, when objection is not made, error is reviewed as provided in OCGA § 17-8-58 (b).

In *State v. Kelly*, 290 Ga. 29, 32-33 (2) (a) (718 SE2d 232) (2011), this Court noted the similarities between OCGA § 17-8-58 (b) and Federal Rule of Criminal Procedure 52 (b), and looked to federal cases which articulated and applied the plain error standard found in that Rule. Accordingly, we set forth the test for determining whether there is plain error in jury instructions under OCGA § 17-8-58 (b) as follows.

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

Id. at 33 (2) (a) (Citations and punctuation omitted.).

As noted above, the verdict form used here must be considered erroneous. See *Rucker*, supra. As to an affirmative waiver of that

---

(b) Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section.

error, at trial, the court asked: "Is the verdict form acceptable to the defense?" Counsel for Cheddersingh responded: "I believe so. Let me look at it one more time." No objection was made. But, to constitute an affirmative waiver under *Kelly*, supra, a "deviation from a legal rule" must have been "intentionally relinquished or abandoned." As stated in *United States v. Olano*, 507 U. S. 725, 733 (II) (A) (113 SC 1770, 123 LE2d 508) (1993), upon which *Kelly* particularly relied, "[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' [Cits.]" The exchange with the trial court does not show that Cheddersingh *intentionally* relinquished his right to have the burden of proof properly stated in the verdict form; rather, the failure to object is more appropriately described as a forfeiture of the right. See *Puckett v. United States*, 556 U. S. 129, 138 (III) (A) (129 SC 1423, 173 LE2d 266) (2009); *United States v. Graham*, 622 F3d 445, 455, n. 9 (6th Cir. 2010); *United States v. Mashek*, 606 F3d 922, 930 (II) (B) (8th Cir. 2010). Nor can we discern any tactical reason on the part of the defense to embrace such a burden-shifting verdict form. See *United States v. Quinones*, 511 F3d 299, 321 (E) (4) (2nd Cir. 2007). Accordingly, the error in the verdict form was not intentionally waived under *Kelly*.[3]

Regarding the second prong of the *Kelly* test, the error was also obvious and not subject to reasonable dispute. "Nothing is more fundamental to the jury's consideration of a criminal case than its understanding and application of the State's burden of proof beyond a reasonable doubt." *Jones v. State*, 252 Ga. App. 332, 334 (2) (a) (556 SE2d 238) (2001). See also *Tillman*, supra; *Chambers v. State*, 127 Ga. App. 196, 199-200 (5) (192 SE2d 916) (1972). And, this Court has repeated the correct standards regarding the presumption of innocence and the burden of proof on numerous occasions. See, e.g., *Bruce*, supra; *Eckman*, supra. The United States Supreme Court has stated that " '[p]lain' is synonymous with 'clear' or, equivalently, 'obvious.' " *Olano*, supra at 734. Indeed, the United States Supreme Court has said that plain error includes that which is "so 'plain' the

---

[3] In *Kelly*, supra at 34, n. 5, we noted that other issues controlled the disposition of the case on appeal and it was then unnecessary to address whether counsel's affirmative statement to the trial court that the defense had no objection to the jury instructions as given constituted an affirmative waiver. In this case, Cheddersingh did not make a definitive statement that there were no objections to the verdict form, nor did Cheddersingh induce error in the manner discussed in *Jackson v. State*, 246 Ga. 459 (271 SE2d 855) (1980); rather, the transcript reveals that the verdict form was prepared by the trial court and provided to the parties for review. Further, *Jackson's* statement that when "counsel neither objected nor reserved the right to later object . . . the defendant has waived the right to raise the issue on appeal," id. at 460, was made under law prior to OCGA § 17-8-58.

trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *United States v. Frady*, 456 U. S. 152, 163 (III) (A) (102 SC 1584, 71 LE2d 816) (1982). Here, near the end of the instructions to the jury, the court said: "This is your verdict form. It says: Count one, Murder. As to the offense of murder, we the jury, unanimously and beyond a reasonable doubt find the defendant guilty or not guilty."[4] We believe that this verbalization of the written charge should have alerted both the trial court and the prosecutor, as well as defense counsel, to the error, which should have provided an opportunity for the court to promptly correct it. See id.[5]

The third prong of the *Kelly* test is that "the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings." *Kelly*, supra at 33 (2) (a) (Punctuation omitted.). By using a verdict form that advised the jury that it was empowered to state that it "beyond a reasonable doubt find[s] the Defendant [not guilty]," the trial court actively removed the presumption of innocence from Cheddersingh's trial. " 'The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.' [Cit.]" *Tillman*, supra at 292-293 (1). That principle is

> a basic component of a fair trial under our system of criminal justice, and the right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. [Cit.] The presumption of innocence, the burden of proof, and the standard of proof are the fundamental doctrines of American criminal jurisprudence and the bedrock of determining guilt or innocence in a criminal case. [Cit.]

Id. at 293 (Punctuation omitted.). Accordingly, under all the circumstances of this case, the error presented here must be considered to

---

[4] Immediately following this statement, the court said: "Count two is as to felony murder. Count three is as to felony murder." The court proceeded in a similar vein with the remaining counts of the indictment; the court did not again repeat the passage, "we the jury, unanimously and beyond a reasonable doubt find the defendant guilty or not guilty."

[5] It is of no moment that the appellate courts of this State have not previously faced a preprinted verdict form with this language. For an error to be obvious for purposes of plain error review, "it must be plain under controlling precedent *or in view of the unequivocally clear words of a statute or rule.*" *United States v. Lett*, 483 F3d 782, 790 (III) (11th Cir. 2007), citing *Olano*, supra (Emphasis supplied.). The fundamental nature of the error makes it unnecessary that the specific verdict form used here have been previously addressed; the law on the matter was hardly unsettled, and a correction would not have required any extension of precedent. See *United States v. Trejo*, 610 F3d 308, 319 (II) (E) (5th Cir. 2010).

have affected Cheddersingh's "substantial rights" such that the third prong of the *Kelly* test is met.

As to the fourth prong of the *Kelly* test, in which our discretion to remedy the error "ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings," supra at 33 (2) (a) (Punctuation omitted.), the necessity of doing so is beyond dispute. The presumption of innocence is fundamental to a fair trial and a conviction resulting from a procedure in which the trial court misinformed the jury regarding the effect of that presumption affects not only the fairness of that proceeding itself, but public confidence in the judicial process as a whole. See *Tillman*, supra at 295 (2).

Cheddersingh must be awarded a new trial.[6]

*Judgments reversed. All the Justices concur.*

DECIDED FEBRUARY 27, 2012 —
RECONSIDERATION DENIED MARCH 19, 2012.

*Steven E. Phillips*, for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Marc A. Mallon, Sheila E. Gallow, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General*, for appellee.

---

[6] Cheddersingh also contends that the trial court erred in determining that he was not deprived of the effective assistance of trial counsel. To the extent that he asserts that trial counsel's financial interest in receiving his fee for representing Cheddersingh at trial created a conflict of interest within the meaning of *Edwards v. Lewis*, 283 Ga. 345, 350 (2) (658 SE2d 116) (2008), the argument is misplaced. See *Fogarty v. State*, 270 Ga. 609 (513 SE2d 493) (1999). In any event, we find that the alleged error is unlikely to recur on retrial. See *Boring v. State*, 289 Ga. 429, 435 (3) (711 SE2d 634) (2011).