In the Supreme Court of Georgia

Decided: May 23, 2016

S16A0321. STANBURY v. THE STATE.

MELTON, Justice.

Following a jury trial, Thaddius Stanbury appeals his convictions for the

murder of Allen Blash, Jr., and possession of a firearm during the commission

of a felony.[1] Stanbury contends that: (1) the trial court committed plain error by

not providing a jury charge on the necessity of corroborating accomplice

[1] On October 8, 2010, Stanbury was indicted for the malice murder of Blash, felony murder of Blash based upon aggravated assault, felony murder of Blash predicated on criminal attempt to commit armed robbery, aggravated assault with a deadly weapon of Blash, criminal attempt to commit armed robbery, and possession of a firearm during the commission of a felony. Following a jury trial ending on February 27, 2012, Stanbury was found guilty of all counts. Stanbury was sentenced to life imprisonment for malice murder plus five years for possession of a firearm during the commission of a felony. The felony murder counts were vacated by operation of law, see Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the remaining counts merged for purposes of sentencing. Though we question the appropriateness of merging the count of criminal attempt to commit armed robbery, we need not address that issue due to the reversal of Stanbury's conviction. On March 2, 2012, Stanbury filed a motion for a new trial, amended on December 6, 2013, which the trial court denied on May 7, 2015. Stanbury filed a timely notice of appeal, and his case, submitted for decision on the briefs, was docketed to the January 2016 Term of this Court.

testimony; (2) trial counsel rendered ineffective assistance by failing to request a jury charge on accomplice corroboration; (3) the State presented insufficient corroborating evidence of Salik McKenzie's accomplice testimony; and (4) the trial court erred by failing to exclude McKenzie's accomplice testimony. For the reasons set forth below, we reverse.

1. Viewed in the light most favorable to the verdict, the record shows that, during the day on August 20, 2009, Krystel Quarles and Blash were walking back to Quarles's boarding home when two men pulled up in a gold Honda automobile and called Blash over to them in order to purchase marijuana. Later in the afternoon, Blash received a phone call from McKenzie, who wanted to purchase more marijuana. That evening, McKenzie and Stanbury arrived at the front door of Quarles's boarding home. Although Quarles did not know Stanbury, she later gave a physical description of the man accompanying McKenzie that matched Stanbury's appearance.[2] Quarles was upstairs when she heard Blash ask, "what are you doing?" Quarles peeked downstairs and saw McKenzie's accomplice restraining Blash's hands behind his back and

---

[2] Quarles was not able to specifically identify Stanbury as the second man at trial.

McKenzie pointing a gun at him. Quarles recognized McKenzie, but only caught brief glimpses of the accomplice's face. Blash got his arms loose, pulled out his gun, and pursued the two men. Quarles lost sight of the two men, then heard several gunshots, and saw Blash fall forward onto the ground. She called 911 and saw the man matching Stanbury's description run down the road. Quarles saw McKenzie wrestling with Blash, heard a final gunshot, and saw McKenzie injured in the front lawn. After the commotion dissipated, Quarles attended to Blash, who was fatally injured. Ballistics experts concluded Blash was shot with both a .38 caliber gun and a .45 caliber gun. Quarles affirmatively identified McKenzie as the man holding the gun at a photo lineup eight days after the shooting, as well as at trial. Quarles described Stanbury as taller than McKenzie, with shoulder length dreadlocks, and a very dark complexion. After the shooting, Andrae Wilson heard cries for help and ran outside. Wilson took the injured McKenzie to the hospital, and told police that he saw Stanbury and McKenzie walking in the neighborhood prior to the shooting. At trial, Wilson identified Stanbury as a person he saw near Quarles's house after he rushed out to respond to cries for help.

Antonio Studiemyer said he saw Stanbury with McKenzie earlier the day

of the shooting, and identified Stanbury in a photo lineup as one of the people who told him McKenzie had been shot. Several people, including Studiemyer, Cedric Carrigan, and Deroyce Simmons, saw a second man matching Stanbury's description leave the scene of the shooting, or near the scene close to the time of the shooting. Carrigan and Simmons saw someone carry the wounded McKenzie out of the house, tuck a pistol into a pouch, and flee down the street. Police located and arrested Stanbury on May 18, 2010 in Worchester, Massachusetts, where he gave the police a fake name of "Destino Williams."

McKenzie and Stanbury began trial as co-defendants. During trial, McKenzie accepted a plea offer from the State and testified against Stanbury.[3] According to McKenzie's testimony, Stanbury shot Blash. McKenzie testified Stanbury owned a .45 caliber gun, and McKenzie said he owned a .38 caliber gun. He also identified Stanbury in court as the person who went with him into Quarles's house. He testified that only he, Stanbury, Blash, and Quarles were inside the house when the incident occurred. McKenzie testified that Stanbury

---

[3] Although McKenzie initially refused to take the oath to testify truthfully, he subsequently took the oath with full compliance. This forms the basis of Stanbury's contention that McKenzie's testimony should have been excluded.

tried to snatch the marijuana from Blash during the drug transaction, that McKenzie intervened in the "tussle," and McKenzie's .38 caliber gun fell out of his waist. Although McKenzie gave varying descriptions of the events, he stated that, after his gun fell on the ground, Stanbury picked it up and shot Blash with both McKenzie's gun and Stanbury's own gun. The next thing McKenzie knew, McKenzie was shot and lying on the ground injured.

This evidence was sufficient to enable the jury to find Stanbury guilty of the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (99 SCT 2781, 61 LE2d 560) (1979). Nonetheless, Stanbury contends there was insufficient evidence to corroborate McKenzie's testimony and secure his conviction. We disagree.

Former OCGA § 24-4-8[4] "imposes an additional requirement where a fact necessary to conviction is supported solely by testimony of an accomplice like [McKenzie]." Johnson v. State, 288 Ga. 803, 805 (2) (708 SE2d 331) (2011).

---

[4] This case was tried under Georgia's old Evidence Code, and for that reason, we cite former OCGA § 24-4-8. We note, however, that the provisions of former OCGA § 24-4-8 were carried forward into the new Evidence Code and now can be found at OCGA § 24-14-8, effective for cases tried after January 1, 2013.

Under the statute, "[in] felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient [to establish a fact]" and must be supported by the testimony of another witness or by "corroborating circumstances." See Ramirez v. State, 294 Ga. 440, 442 (754 SE2d 325) (2014). Furthermore:

> sufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged. It must, however, be independent of the accomplice testimony and must directly connect the defendant with the crime, or lead to the inference that he is guilty. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict.

(Citations and punctuation omitted). Threatt v. State, 293 Ga. 549, 551 (1) (748 SE2d 400) (2013). Evidence of the accused's conduct before and after the crime was committed may give rise to an inference that he participated in the crime. See Bradford v. State, 262 Ga. 512, 513 (421 SE2d 523) (1992).

McKenzie gave three separate statements maintaining that Stanbury was the second man who participated in the attendant crimes on August 20, 2009. The State provided sufficient corroboration of McKenzie's testimony, including (1) Quarles's eyewitness account indicating a second man matching Stanbury's description participated in the murder, (2) testimony from multiple individuals

6

placing Stanbury at the crime scene around the time of the murder, (3) testimony from witnesses saying the second man who carried the wounded McKenzie out of the house had a handgun and matched Stanbury's description, and (4) Stanbury fleeing to Massachusetts following the murder and assuming the false identity of "Destino Williams." The aforementioned evidence, though circumstantial, gives at least slight corroboration to McKenzie's testimony. See, e.g., Edmond v. State, 267 Ga. 285, 287 (476 SE2d 731) (1996); Bradford, supra, 262 Ga. at 513. Therefore, there was no violation under former OCGA § 24-4-8.

2. Stanbury contends the trial court committed plain error by failing to charge the jury on the necessity of corroborating McKenzie's accomplice testimony under former OCGA § 24-4-8. Under the specific facts of this case, we agree. A review of the jury instructions shows that the jury was told only that particular facts could be established based on the testimony of a *single* witness, which would necessarily include accomplice testimony. Therefore, in essence, the jury received an instruction that it could believe the facts as described by McKenzie without corroboration—in direct contradiction to former OCGA § 24-4-8. As McKenzie was the only witness to affirmatively establish Stanbury's

7

participation in the commission of these crimes, the trial court committed plain error in omitting the accomplice corroboration charge, as more fully discussed below.

Here, appellate review for plain error is proper under OCGA § 17-8-58 (b) because, notwithstanding Stanbury's failure to request an accomplice corroboration charge or object to its omission at trial, Stanbury properly asserts an error in jury instructions on appeal. See Hamm v. State, 294 Ga. 791, 798 (2) (n.8) (756 SE2d 508) (2014); Cheddersingh v. State, 290 Ga. 680, 683 (2) (724 SE2d 366) (2012); State v. Kelly, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011).

There are four prongs in the test for plain error.

First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

(Citations and punctuation omitted.) Kelly, supra, 290 Ga. at 33 (2) (a).

As to the first and second prongs of the plain error test, the trial court's

failure to provide a jury charge regarding accomplice corroboration was clear error not subject to reasonable dispute. "For an error to be obvious for purposes of plain error review, 'it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule.'" (Citations omitted.) Cheddersingh, supra, 290 Ga. at 685 (2) (n. 5).

The trial court's instructions "deviat[ed] from a legal rule," former OCGA § 24-4-8, which "unequivocally" required corroboration of accomplice testimony in felony cases. Id.; see also Kelly, supra, 290 Ga. at 33 (2) (a). Instead, the trial court charged the jury that "the testimony of a single witness, if believed, is generally sufficient to establish a fact." Here, the trial court did not provide the jury with the "proper guidelines for determining [Stanbury's] guilt or innocence" by failing to give the required accomplice corroboration charge, and thus the trial court's failure to provide the unrequested accomplice corroboration charge was clear error not subject to dispute. See, e.g., Seay v. State, 276 Ga. 139, 140 (2) (576 SE2d 839) (2003). Furthermore, "[w]hen, as here, [the instructions the jury receives] are infirm, the expected result is not enlightenment, but confusion." See Cheddersingh, supra, 290 Ga. at 685 (5).

Therefore, the first two prongs of the Kelly test are met.[5] See Seay, supra 276 Ga. at 140 (2); see also Kelly, supra, 290 Ga. at 33(2) (a).

"The third prong of the Kelly plain error test requires that 'the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings.'" (Citation and punctuation omitted.) Cheddersingh, supra, 290 Ga. at 685 (quoting Kelly, supra, 290 Ga. at 33 (2) (a)). By failing to give the required accomplice corroboration charge and instead charging the jury that the testimony of a single witness, if believed, is generally sufficient to establish a fact, the trial court impermissibly empowered the jury to find Stanbury guilty

---

[5] Additionally, Stanbury also did not waive his right to the accomplice corroboration jury charge under Kelly. See Kelly, supra, 290 Ga. at 33(2) (a). Waiver is distinct from forfeiture. Cheddersingh, supra, 290 Ga. at 684 (2). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" Id. (Citations omitted.).

Stanbury's trial counsel withdrew a written request for a charge regarding defendants' statements and never requested an accomplice corroboration charge or objected to its omission. His counsel's withdrawal of the defendants' statements charge waived the right to that particular charge. His counsel's failure to request the corroboration instruction constituted forfeiture, and did not waive Stanbury's right to the accomplice corroboration charge. See Cheddersingh, supra, 290 Ga. at 684 (2).

based solely on McKenzie's accomplice testimony. Because jury instructions are "the lamp to guide the jury's feet in journeying through the testimony in search of a legal verdict," see Chase, supra, 277 Ga. at 639, we must presume the jury accepted the authorization to establish a fact based solely on McKenzie's accomplice testimony. Though there was sufficient corroboration in this case to support Stanbury's conviction, McKenzie's accomplice testimony served as the bedrock of the conviction because he was the only witness who affirmatively identified Stanbury as the second man inside the house who robbed and shot Blash. While there was corroborating evidence that was sufficient to support a verdict, that evidence was in no way overwhelming, and, in some instances, it was conflicting. The jury was not properly instructed on the manner in which they needed to judge this evidence, as the sole arbiter of credibility. See Hamm v. State, 294 Ga. At 798 (2). As a consequence, the outcome of the trial court proceedings was "likely affected" by the trial court's failure to provide an accomplice corroboration charge to the jury. See Kelly, supra, 290 Ga. at 33 (2) (a). Indeed, under all the circumstances of this case, the trial court adversely affected Stanbury's "substantial rights" by failing to provide the required accomplice corroboration charge because the charges as given "fail[ed] to

11

provide the jury with the *proper* guidelines for determining [Stanbury's] guilt or innocence." See Seay, supra, 276 Ga. at 140 (2) (emphasis added).

Under the fourth Kelly prong, an appellate court has the discretion to remedy the error upon a determination that "the error seriously affects the fairness, integrity, or public reputation of the proceedings below." Kelly, supra, 290 Ga. at 33 (2) (a). A trial court's failure to give an accomplice corroboration instruction when a defendant is affirmatively identified as the second participant and gunman in a murder based *solely* on accomplice testimony undermines the fairness of the proceedings, at least when coupled with the express authorization by the court for the jury to establish critical facts based solely on this testimony. In these circumstances, if a conviction could be affirmed in spite of the trial court erroneously providing a witness testimony instruction wholly opposite to an accomplice corroboration charge, an accused would have no way of knowing whether the jury secured his conviction through permissible means. In effect, laws and jury charges requiring accomplice corroboration would be meaningless. Therefore, we hold that this error "seriously affect[ed] the fairness, integrity, or public reputation of the proceedings below." See Kelly, supra, 290 Ga. at 33 (2) (a).

We find that the trial court plainly erred when it failed to instruct the jury on the necessity of corroboration regarding McKenzie's accomplice testimony.

3. We do not reach Stanbury's remaining enumerations of error, as they are unlikely to recur upon retrial.

Judgment reversed. All the Justices concur.