**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 27, 2017**

# In the Court of Appeals of Georgia

A17A0333. BURNS v. THE STATE.

BRANCH, Judge.

Following a jury trial, Willie Lewis Burns was convicted in DeKalb County Superior Court of aggravated assault and theft by receiving stolen property. Burns now appeals from the denial of his motion for a new trial on the charge of aggravated assault, asserting that his lawyer's failure to request an instruction regarding the requirement that accomplice testimony be corroborated constituted ineffective assistance of counsel. Burns further contends that the trial court committed plain error when, after instructing the jury that the testimony of a single witness was sufficient to support a conviction, it failed to further instruct jurors that the testimony of an accomplice must be corroborated. We agree with Burns that he received ineffective

assistance of counsel, and we therefore reverse the order denying Burns's motion for new trial as to the aggravated assault charge.[1]

Viewed in the light most favorable to the jury's verdict, *Martinez v. State*, 306 Ga. App. 512, 514 (702 SE2d 747) (2010), the record shows that this case arises out of the efforts of Burns and his co-defendant, Jarvorris Palmer, to sell a car. Burns and Palmer were tried together and at trial both stipulated that the car, a white Dodge Charger, was a stolen vehicle to which they did not hold title. On the morning of August 16, 2011, Burns and Palmer drove the car to meet with the victim, who had expressed an interest in buying it. After some negotiations, Burns and Palmer drove the victim in the Dodge Charger to the victim's bank so that he could withdraw cash for the purchase of the vehicle. The victim went into the bank first, and Burns and Palmer followed a short time later. All three men were observed in the bank by a loan officer and the bank manager, and images of all three men were captured by the bank's video recording system and were introduced into evidence at trial. After the victim completed his cash withdrawal, the men left the bank and returned to the car, which was parked in front of the manager's office window. Both the bank manager

---

[1] Burns has not challenged his conviction on the charge of theft by receiving, and we therefore affirm his conviction on that count of the indictment.

and the loan officer then witnessed the men engaging in what appeared to be a heated argument regarding paperwork that either Burns or Palmer was holding.[2] All three men then got into the car, with the victim getting into the backseat, and drove to a parking lot a short distance away. Approximately five minutes later, the bank manager left the bank and was walking towards her car when she heard what she believed was a gunshot. When the manager looked towards the sound of the shot, she saw the victim running and being pursued by the man who had been seated on the front passenger side of the car. The manager heard an additional three or four gunshots, and it appeared to her that the man pursuing the victim was shooting at him. As the manager watched, she saw the victim jump into oncoming traffic, saw the man pursuing him leave the scene and jump the fence surrounding a nearby apartment complex, and observed that the Dodge Charger had been driven away from area.

The only other witness to the shooting was a repairman who had been working on an air-conditioning unit located on the roof of a nearby restaurant. After hearing a gunshot, the repairman looked towards the sound and saw a man exiting a white Dodge Charger holding a pistol and shooting at a second man. The repairman

---

[2] During his testimony at trial, Palmer acknowledged that the papers were fake documents (including a fake car title) he "had . . . drawn up" to help facilitate the sale of the stolen vehicle.

3

describe the shooter as dark-skinned with dreadlocks, and wearing a white shirt and baggy jeans.[3] According to the repairman, the car and driver fled the scene as the shooter ran away on foot.

Emergency personnel responded to the scene and discovered the victim suffering from a gunshot wound to the abdomen. Less than an hour after the incident, police located Burns and Palmer at an apartment complex within walking distance of the area where the shooting occurred. The Dodge Charger was found parked in the lot at the same apartment complex. Police then conducted a show-up with both the bank manager and the loan officer, each of whom positively identified Burns and Palmer as the men they had seen in the bank with the victim. Additionally, the victim subsequently identified Burns and Palmer from two photographic lineups as the men who had assaulted and attempted to rob him.

After Burns and Palmer were taken into police custody, Palmer gave police a statement in which he identified Burns as the shooter. . The police obtained arrest warrants for both men based on Palmer's statement, and Burns and Palmer were thereafter indicted jointly on charges of kidnapping with bodily injury, armed

---

[3] The record shows that neither Burns nor Palmer had dreadlocks at the time of the crime, and at trial, the repairman could not identify either Burns or Palmer at trial as the shooter.

4

robbery, aggravated assault, aggravated battery, and theft by receiving stolen property. With respect to the charge of aggravated assault, the indictment alleged that Burns and Palmer "individually and as parties [to] the commission of a crime . . . did make an assault upon [the victim] with a handgun, a deadly weapon."

At trial, there was conflicting evidence as to the identity of the shooter. According to the victim, both Burns and Palmer shot at him at some point. Although the victim's testimony on this issue was confusing and at times self-contradictory, parts of that testimony indicated that Palmer was the man shooting at the victim as he attempted to flee from the car. Additionally, the bank manager positively identified Palmer as the shooter. The bank manager also noted that the shooter had been on the passenger side of the car, and in his testimony the victim stated that Burns was the driver. Furthermore, both the bank manager and the repairman described the shooter as wearing a white T-shirt and baggy blue pants or jeans, and the still photo taken from the video of the men inside the bank shows Burns wearing clothes matching that description.

Palmer testified in his own defense and stated that he had agreed to help Burns sell a car both men knew was stolen, identified Burns as the shooter, and denied participating in the aggravated assault. Palmer acknowledged that when the incident

5

began, Burns was driving the car and he was the person seated in the front passenger seat. But Palmer insisted that despite the bank manager's unequivocal identification of the front seat passenger as the shooter (and despite her identification of Palmer as both the front seat passenger and the shooter), it was Burns who had committed the assault against the victim. Specifically, Palmer stated that when the victim decided not to purchase the car, Burns pulled a gun from underneath the driver's seat and fired a shot towards the victim. Palmer further explained that when the victim escaped from the car, Burns ran from the scene on foot, and Palmer then moved to the driver's seat and drove the car to the nearby apartment complex.

In charging the jury, the trial court instructed the jurors that, "[t]he testimony of a single witness, if believed, is sufficient to establish a fact. Generally there is no legal requirement of corroboration of a witness provided that you find . . . the evidence to be sufficient." Burns's trial counsel did not object to this charge, and he did not request a corresponding charge that the uncorroborated testimony of an accomplice is insufficient to support a conviction. The jury found both Burns and Palmer not guilty of kidnapping with bodily injury, armed robbery, and aggravated

6

battery,[4] and found both guilty of theft by receiving stolen property. With respect to the charge of aggravated assault, the jury found Burns guilty, but found Palmer not guilty.

Following his conviction, Burns filed a motion for a new trial on the charge of aggravated assault, alleging that his trial counsel's failure to request a jury charge on the requirement that accomplice testimony be corroborated constituted ineffective assistance of counsel. The trial court held a hearing on that motion, at which trial counsel testified that the theory of defense was that Palmer did the shooting and that Burns "just happened to be there." Defense counsel further testified that he was aware of the requirement that an accomplice's testimony must be corroborated, but he could not recall a reason for his failure to request a jury charge on that requirement. The trial court subsequently denied the new trial motion, and Burns now appeals from that order.

1. OCGA § 24-14-8 provides, in relevant part,

---

[4] The only evidence of kidnapping with bodily injury, armed robbery, and aggravated battery was the testimony of the victim. That testimony, however, was confusing and at times self-contradictory. Additionally, elements of that testimony were in direct conflict with both the physical evidence and the testimony of other witnesses. And viewing the jury's verdict in light of the evidence, it appears jurors rejected the victim's testimony almost entirely.

[t]he testimony of a single witness is generally sufficient to establish a fact. However, in . . . felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness [in felony cases].

Under this rule, where an accomplice testifies at trial, a jury may not rely solely on that testimony to find any "fact necessary to [sustain the defendant's felony] conviction." *Johnson v. State*, 288 Ga. 803, 805 (2) (708 SE2d 331) (2011) (applying former OCGA § 24-4-8, now codified as OCGA § 24-14-8). See also *Ramirez v. State*, 294 Ga. 440, 442 (754 SE2d 325) (2014) (same). Instead, the existence of any such fact must also be supported either by the testimony of an additional witness or by other, independent evidence that corroborates the accomplice's testimony. And in a relatively recent case, our Supreme Court held that it is error for a trial court to refuse a request to charge on the requirement that accomplice testimony be corroborated even "where the accomplice's testimony is in fact corroborated by independent evidence." *Hamm v. State*, 294 Ga. 791, 795 (2) (756 SE2d 507) (2014) (expressly overruling a line of cases to the contrary) (citations omitted).

Burns contends that in light of the foregoing law, and given the trial court's instruction that the testimony of a single witness is sufficient to sustain a conviction,

8

trial counsel's failure to request a jury instruction that the testimony of an accomplice must be corroborated constituted ineffective assistance of counsel. To prevail on this claim, Burns bears the burden of proving both that the performance of his lawyer was deficient and that he suffered prejudice as a result of this deficient performance. *Strickland v. Washington,* 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To demonstrate deficient performance, Burns must prove that his lawyer's failure to request such a jury instruction was objectively unreasonable, considering all of the circumstances and in light of prevailing professional norms. Id. at 687-690. And to show that prejudice resulted from this deficient performance, Burns must prove that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Here, the trial court found that counsel's failure to request an instruction regarding the corroboration of accomplice testimony constituted deficient performance. In its brief, the State concedes that trial counsel's performance was deficient in this regard, and we agree with this conclusion. See *Fisher v. State*, 299 Ga. 478, 485 (2) (a) (788 SE2d 757) (2016) (finding deficient performance where "it would have been entirely unreasonable for [defense counsel] to make a 'strategic

decision' to approve the trial court's instruction to the jury that 'generally, the testimony of a single witness . . . is sufficient to establish a fact,' without insisting that the court also instruct the jury that this general rule did not apply to [an accomplice's] testimony"). See also *Hamm*, 294 Ga. at 796-797 (2). The question before us, therefore, is whether, based on the record in this case, Burns has shown he was prejudiced by this deficient performance – i.e., whether counsel's failure to request a jury instruction on the corroboration of accomplice testimony undermines confidence in the outcome of the trial. *Fisher*, 299 Ga. at 486 (2) (b).

When determining prejudice in the context of an ineffective assistance claim,

> "we review the record de novo [and] we weigh the evidence as we would expect reasonable jurors to have done so, as opposed to assuming that they took the most pro-guilt view possible of every bit of evidence in the case." *Boothe v. State*, 293 Ga. 285, 289-290 & n.8 (745 SE2d 594) (2013) (citation and punctuation omitted) (explaining the difference between the way courts review the harm caused by errors and the way courts conduct due process review of the sufficiency of the evidence). See also *Strickland*, 466 U. S. at 695, 104 SCt. 2052 ("In making the prejudice determination, a court hearing an [ineffective assistance] claim must consider the totality of the evidence before the judge or jury."); *Humphrey v. Morrow*, 289 Ga. 864, 870 (717 SE2d 168) (2011) (explaining that when the court assesses the effect of evidence that not presented to the jury at trial due to defense counsel's

10

deficient performance . . . "our assessment of how a jury might have reacted to the additional evidence is an assessment of the legal question of prejudice, which we perform de novo").

*Woodard v. State*, 296 Ga. 803, 810, n. 5 (771 SE2d 362) (2015).

In denying Burns's motion for a new trial, the trial court found that Burns could not demonstrate prejudice because he had been charged as a party to the crime "which mean[t] that the jury could convict if they found that [Burns] was either a party to the crime [of aggravated assault] or the actual perpetrator of the crime." The trial court then found that the evidence at trial established "beyond a reasonable doubt" that Burns was a party to the crime, as it showed that Burns "was at the scene of the crime and participated in it." Thus, the court reasoned that because evidence independent of Palmer's testimony supported Burns's conviction as a party to the crime of aggravated assault, Burns was not prejudiced by his lawyer's failure to request the jury charge at issue. The flaw in this reasoning is that it fails to acknowledge that *the same jury* that convicted Burns of aggravated assault acquitted Palmer of that crime. Thus, the jury found that Burns alone perpetrated the crime of aggravated assault against the victim, and that Palmer was not even a participant in that crime. Accordingly, the jury's verdict forecloses the possibility that it convicted

11

Burns as a party to the crime of aggravated assault committed by Palmer.[5] See OCGA § 16-2-21 (a party to the crime is one "who did not directly commit the crime").

Furthermore, the mere fact that there was some evidence corroborating Palmer's testimony does not prevent Burns from proving he suffered prejudice as a result of counsel's failure to request the jury instruction at issue. With respect to prejudice resulting from the absence of this jury instruction, the question is not whether there was sufficient corroboration of the accomplice testimony to allow the jury to rely on that testimony when determining the defendant's guilt. Rather, as noted above, the question is whether, under the circumstances of this case, the

---

[5] We recognize that the acquittal of one claimed to have directly committed the crime "does not bar the prosecution and conviction of another party to the crime in a *separate and distinct trial* of the issues." *Eades v. State*, 232 Ga. 735, 737 (4) (208 SE2d 791) (1974) (emphasis supplied). See also OCGA § 16-2-21 (a person may be convicted as a party to a crime "although the person claimed to have directly committed the crime has not been prosecuted or convicted, has been convicted of a different crime or degree of crime, or . . . has been acquitted"); *White v. State*, 257 Ga. 236 (356 SE2d 875) (1987); *Rhines v. State*, 288 Ga. App. 128, 130 (1) (653 SE2d 500) (2007). Thus, had Palmer been acquitted of aggravated assault in a separate trial, by a jury other than the one that convicted Burns, Palmer's acquittal would not prevent Burns from being convicted as a party to aggravated assault. See *White*, 257 Ga. at 236 (acquittal of principal is relevant evidence in subsequent trial of an accomplice charged as a party to the crime, but it does not bar the accomplice's conviction as a party); *Rhines*, 288 Ga. App. at 130 (1) (same). But given that Burns and Palmer were tried jointly before the same jury, the only way to interpret the verdict on the charge of aggravated assault is that Burns was convicted as the principal, not as a party to the crime.

12

absence of an instruction on the necessity for corroboration of accomplice testimony undermines confidence in the outcome of trial. See *Fisher*, 299 Ga. at 487 (2) (b) (finding that trial counsel's failure to request an instruction on the requirement that accomplice testimony must be corroborated resulted in prejudice to the defendant, despite the fact that corroborating evidence was introduced at trial). See also *Stanbury v. State*, 299 Ga. 125, 131 (2) (786 SE2d 672) (2016) (although other evidence corroborated accomplice's testimony, the "trial court's failure to give an accomplice corroboration instruction . . . when coupled with the express authorization by the court for the jury to establish critical facts based solely on this testimony" constituted plain error, as it raised the possibility that the defendant's conviction was secured through impermissible means). Here, viewing the record – including the charge to the jury – as a whole, and weighing the evidence "as we would expect reasonable jurors to do," we find that Burns has demonstrated prejudice resulting from trial counsel's deficient performance.

Palmer's identification of Burns as the sole shooter was directly contradicted by the testimony of the bank manager, who affirmatively identified Palmer as the shooter. Additionally, other circumstantial evidence pointed to Palmer as the assailant, including the eyewitness description of the clothing worn by the shooter,

which matched the clothing Palmer was wearing at the time of the crime. And the bank manager's testimony that the shooter had been seated in the front passenger seat of the car, in conjunction with Palmer's admission that he had been the front seat passenger, also served to undermine Palmer's claim that Burns alone committed the aggravated assault. Moreover, although the victim stated that both defendants shot him, that testimony also indicated that Burns never left the car and implied that Palmer was the man who pursued the victim and delivered the shot that injured him. Given the evidence, the absence of an instruction on the requirement that Palmer's testimony be corroborated, when coupled with the trial court's instruction that the testimony of a single witness is sufficient to establish a fact,"impermissibly empowered the jury" to disregard any conflicting testimony and " to find [Burns] guilty [of aggravated assault] based solely on [Palmer's] accomplice testimony." *Stanbury*, 299 Ga. at 130 (2). And "[b]ecause jury instructions are the lamp to guide the jury's feet and journeying through the testimony in search of a legal verdict, we must presume the jury accepted the authorization to establish a fact based solely on [Palmer's] accomplice testimony." Id. at 130-131 (2) (citation and punctuation omitted). Accordingly, we must conclude that the outcome of trial "was 'likely affected' by the trial court's failure to provide an accomplice corroboration charge to

14

the jury." Id. (citation omitted). See also *Martin v. State*, 298 Ga. 259, 277-278 (6)

(c) (779 SE2d 342) (2015), cert. denied, ___ U. S. ___ (137 SCt 62, 196 LEd2d 60)

(2016) (noting that the "test for harm under plain error review is equivalent to the test

in ineffective assistance of counsel cases for whether an attorney's deficient

performance has resulted in prejudice of constitutional proportions").

Thus, we find that under the circumstances of this case, trial counsel's failure

to request a jury instruction regarding the requirement that accomplice testimony be

corroborated constituted ineffective assistance of counsel. *Fisher*, 299 Ga. at 486-487

(2) (b); *Stanbury*, 299 Ga. at 131.

2. In light of our holding in Division 1, we need not address Burns's remaining

enumeration of error.

For the reasons set forth above, we reverse the trial court's denial of Burns's

motion for a new trial on the charge of aggravated assault.

*Judgment reversed. McFadden, P. J., and Bethel, J., concur*.

15