307 Ga. 609
FINAL COPY

S19A1005.  DOYLE v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Matthew Doyle appeals his convictions for the murder of Lyndon "Pookie" Tucker and possession of a firearm during the commission of a felony.[1]  Doyle contends that the evidence was insufficient to support his conviction and that the trial court erred by failing to charge the jury on the requirement for

---

[1] On July 22, 2011, Doyle was indicted, along with Lewis Parks a/k/a Lewis Harris, for malice murder, felony murder predicated on aggravated assault, felony murder predicated on possession of a firearm by a convicted felon, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.  Following a jury trial that took place from June 10 to 14, 2013, Doyle was found guilty on all counts. The trial court sentenced Doyle to life in prison without parole for malice murder and, due to his second conviction for possession of a firearm during the commission of a felony, ten additional years to be served consecutively.  The State has not challenged that sentence.  See *Dixon v. State*, 302 Ga. 691 (4) (808 SE2d 696) (2017).  Doyle initially filed an untimely pro se motion for a new trial. On October 9, 2013, he filed an "Out of Time Motion for a New Trial," which the trial court treated as a request for an out-of-time appeal.  The trial court granted Doyle's request, and the motion for a new trial was amended through new counsel on August 25, 2016.  Following a hearing, the trial court denied the motion for a new trial as amended on March 9, 2018.  Doyle timely filed a notice of appeal, and his case was docketed to the August 2019 term of this Court.  Doyle's case was orally argued on August 6, 2019.

corroboration of accomplice testimony. Because we conclude that the trial court plainly erred, we reverse.

1. Viewed in the light most favorable to the verdict, the evidence shows that, around 8:00 p.m. on December 17, 2010, Tucker's girlfriend dropped him off at his job as a security guard at Midtown Towing. After dropping Tucker off at work, Tucker's girlfriend attended a party at "The Yard," a club located a short distance from Midtown Towing. At the party, two groups of men began fighting. One of the participants in the fight was her cousin, a young man nicknamed "Poochie."

Keith Richardson, a drug addict who often drove Doyle's co-defendant Lewis Parks to various places in exchange for money or drugs, received a call from Parks, who wanted Richardson to take him to pick his son up from The Yard. Richardson drove his blue Ford Explorer to Parks's house, where three men got in his car. Parks sat in the front passenger seat, while Doyle climbed in behind

2

Richardson.[2] When they arrived at The Yard, the men sat in the car and discussed "hurting somebody or jumping on somebody" and "getting payback" for something. After about 20 minutes, Parks directed Richardson to drive to Midtown Towing. Apparently, the men mistakenly believed that "Pookie" was somehow related to "Poochie."

Just before 4:00 a.m., the men arrived at Midtown Towing. Doyle jumped out and ran behind the car. Although Richardson testified at trial that he did not see any weapons the night of the shooting, the lead detective on the case testified that Richardson told him that he had seen Parks "rack" a gun while in the passenger seat and Doyle holding a gun when he got out of the car at Midtown Towing. After Doyle exited the vehicle, Richardson heard gunshots. He started to drive away, but Parks told him to "hold up" so Doyle could get back in the car. Richardson then drove the men back to Parks's house, where he dropped them off.

---

[2] While Richardson testified that both Parks and Doyle were in his vehicle the night of the shooting, the identity of the third man was never established at trial.

Tucker, who had been sitting in Midtown Towing's guard shack, died from eight gunshot wounds, all of which were consistent with the type of injury that results from bullets fired from a high-velocity weapon. The shell casings recovered at the scene and the bullet removed from Tucker's body were consistent with those fired from either an SKS or AK-47 rifle.

The subsequent police investigation found a witness who lived across the street from Midtown Towing. The witness had heard the gunshots and had seen a blue Ford "truck," with one man hanging out the passenger window and another man standing outside the vehicle. Several months after the shooting, an individual named Kerry Henderson contacted the lead detective. Henderson told the detective that, on the night of the shooting, her cousins had borrowed her car to go to the party at The Yard. In the early morning hours, her cousins called her and told her that her car had sustained damage during a fight. When she arrived at a nearby apartment complex to inspect her vehicle, she saw a blue SUV pull up with Parks in the passenger seat.

At trial, Henderson admitted to meeting with the lead detective about the shooting, but insisted she could not recall the details of her conversation with him. The lead detective then testified that Henderson told him that she saw Parks, whom she referred to as "Fat Lewis," and a man named "Matthew" or "Matt" the day after the shooting, and that they admitted to shooting Tucker.[3] The detective obtained Parks's cell phone records, which placed him near Midtown Towing at the time of the shooting. The records also indicated that Parks's cell phone had pinged towers along the route that Richardson described driving when he returned the men to Parks's house.

This evidence was sufficient as a matter of constitutional due process to enable the jury to find beyond a reasonable doubt that Doyle was guilty of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). Nonetheless, contending that Richardson was an

---

[3] Henderson positively identified Parks when testifying, but asserted that she did not see "Matt" in the courtroom.

accomplice, Doyle claims that there was insufficient corroboration of Richardson's testimony. Even if we assume without deciding that Richardson was an accomplice, we disagree. Georgia law requires corroboration in felony cases where the only witness testifying to the defendant's participation in the crime is an accomplice. OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including . . . felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient."). "[T]he corroborating evidence may be circumstantial and slight, and need not be sufficient in and of itself to warrant a conviction, so long as it is independent of the accomplice's testimony and directly connects the defendant to the crime or leads to the inference of guilt." *Lewis v. State,* 301 Ga. 759, 761 (1) (804 SE2d 82) (2017).

Here, the detective's testimony regarding Henderson's report of the confession by "Fat Lewis" and "Matthew" or "Matt" was barely sufficient corroborating evidence from which the jury could infer Doyle's guilt. From this testimony, the jury could infer that

6

"Matthew" or "Matt" was Matthew Doyle, thereby satisfying the statutory requirement for corroborating evidence.

2. Doyle contends that the trial court committed plain error by failing to instruct the jury as to the corroboration requirement for accomplice testimony. Under the circumstances of this case, we agree.

The trial court did not instruct the jury to determine if Richardson was an accomplice, nor did it include the accomplice-corroboration charge in its instruction to the jury. Rather, the trial court gave the jury the following charge: "The testimony of a single witness, if believed, is sufficient to establish a fact. Generally, there is no legal requirement of corroboration of a witness — provided you find the evidence to be sufficient." Doyle neither requested that the accomplice-corroboration charge be added, nor objected to its omission.

"[W]here no request for [the accomplice] charge is made at trial or the defendant otherwise fails to properly preserve this ground for appeal," we review the trial court's failure to give the instruction for

plain error.  *Hamm v. State*, 294 Ga. 791, 797 (2) n.8 (756 SE2d 507) (2014).  We have adopted the federal plain-error test, as articulated by the United States Supreme Court in *Puckett v. United States*, 556 U.S. 129, 135 (II) (129 SCt 1423, 173 LE2d 266) (2009), which requires:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant.  Second, the legal error must be clear or obvious, rather than subject to reasonable dispute.  Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings.  Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citations and punctuation omitted; emphasis in original.)  *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).  The record does not indicate an affirmative waiver of this issue.

(a) *Evidence Supporting a Finding of Accomplice Liability*.  The State argues that Richardson was not an accomplice, and therefore,

8

the trial court did not err by failing to give the accomplice-corroboration charge. However, where the evidence presented at trial could support a finding that a witness acted as an accomplice, it is for the jury to determine whether the witness acted in such a capacity. *Walter v. State*, 304 Ga. 760, 766 (3) (b) (822 SE2d 266) (2018) ("It is error to fail to give a jury instruction on accomplice liability where there is slight evidence supporting a finding that a witness was an accomplice."); *Hamm*, supra, 294 Ga. at 796 (2) ("Where, as here, there is slight evidence supporting a finding that a witness was an accomplice, the jury should be given proper guidance not only on how to decide whether the witness was in fact an accomplice but also on the extent to which it can rely on that witness' [sic] testimony by itself to support a conviction."); *Jones v. State*, 268 Ga. 12, 14 (1) (483 SE2d 871) (1997) ("[I]t is for the jury to determine whether the witness is an accomplice.") (citation and punctuation omitted).

A person may be charged as an accomplice if he "[d]irectly commits the crime," "[i]ntentionally causes some other person to

9

commit the crime," "[i]ntentionally aids or abets in the commission of the crime," or "[i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." OCGA § 16-2-20 (b). "[C]riminal intent may be inferred from presence, companionship, and conduct before, during and after the offense." *Belsar v. State*, 276 Ga. 261, 262 (1) (577 SE2d 569) (2003).

The evidence presented at Doyle's trial could have supported a finding that Richardson intentionally aided in the commission of a crime. According to Richardson's own testimony, he drove Doyle and Parks to Midtown Towing after hearing them discuss hurting somebody and getting payback. He told the detective that he saw Parks rack a gun and Doyle holding a gun while in the car. He drove them away from the scene after hearing gunshots and stopping to wait for Doyle to get back in the car. He also did not report the shooting to authorities and initially told the detective that he knew nothing of the crime. Such evidence was enough to support a finding of accomplice liability. See, e.g., *Vasquez v. State*, 306 Ga. 216, 228 (2) (c) (830 SE2d 143) (2019) (witness's failure to seek medical care

10

for the injured victim child and her subsequent flight could support a finding that she acted as an accomplice); *Hamm*, supra, 294 Ga. at 794 (2) (witness's presence at shooting, her subsequent flight, and her failure to inform authorities could support a finding that she was an accomplice); *Jones v. State*, 242 Ga. 893, 893 (1) (252 SE2d 394) (1979) (evidence of defendant's presence in vehicle before, during, and after the crime, her knowledge that one of her co-passengers was armed, and her failure to notify authorities after the crime supported a finding of accomplice liability). Thus, the question of whether Richardson was an accomplice should have been for the jury to decide.

(b) *Failure to Give the Accomplice-Corroboration Charge in Conjunction with the Single-Witness Charge.*

On multiple previous occasions, we have held that giving the single-witness instruction, while failing to give the accomplice-corroboration instruction, in a case where the defendant was directly linked to the crime through the testimony of an accomplice, deviates from the plain language of OCGA § 24-14-8 and constitutes a clear

and obvious error. See, e.g., *State v. Johnson*, 305 Ga. 237, 239-240 (824 SE2d 317) (2019) (same instruction given); *Lyman v. State*, 301 Ga. 312, 318 (2) (800 SE2d 333) (2017) (same instruction given); *Stanbury v. State*, 299 Ga. 125, 129-130 (2) (786 SE2d 672) (2016) (single witness instruction given without language of "no legal requirement of corroboration"). Such is the case here. The instruction given to the jury at Doyle's trial contradicts the requirement clearly set out in OCGA § 24-14-8, as well as multiple holdings of this Court.[4] Thus, we conclude that the trial court's omission of the accomplice-corroboration charge was a clear and obvious error.

Under the circumstances of this case, there is a strong likelihood that the trial court's error affected the outcome of Doyle's trial. Richardson's testimony was the bedrock on which Doyle's convictions rest. He was the only eyewitness to affirmatively

---

[4] We recognize that these decisions came after the 2013 trial in this case, but "when conducting review of asserted plain error . . . , whether an error is 'clear or obvious' is judged at the time of the appellate court's review." *Lyman*, supra, 301 Ga. at 317-318 (2).

identify Doyle as a participant in the shooting. No cell phone records, forensic evidence, or other eyewitness testimony placed Doyle in Richardson's car or in the vicinity of the shooting.

The State points to Henderson's and the lead detective's testimony as independent evidence of Doyle's involvement. However, their testimony — while sufficient to meet the "slight or circumstantial" requirement for corroboration — is not strong enough corroborating evidence to overcome the instructional error. See *Stanbury*, supra, 299 Ga. at 131 (2); *Johnson*, supra, 305 Ga. at 240-241. Compare *Lyman*, supra, 301 Ga. at 319-320 (2); *Hamm*, supra, 294 Ga. at 797 (2). The detective testified that Henderson reported to him that "Fat Lewis" and "Matt" were with her the morning after the shooting, and that they confessed to the crime. Nowhere in his testimony did he confirm that Henderson identified "Matt" to be Matthew Doyle either by last name or by photograph. Furthermore, when asked to identify Doyle at trial, Henderson testified as follows:

Q. Do you see the person in the courtroom?

13

A. No.

Q. You don't see the person in the courtroom that was there that morning telling you what happened?

A. No.

Q. Do you see Fat Lewis in the courtroom?

A. Yes, to the right.

Q. And he was there that morning?

A. Yes.

Thus, while Henderson's testimony explicitly linked Doyle's co-defendant to the confession, it did not do so for Doyle.

While Henderson's and the detective's testimony may serve as legally sufficient corroboration of Richardson's testimony, the jury was never instructed how to properly evaluate this evidence, and it is likely that the jury convicted Doyle on Richardson's testimony alone, which the jury was affirmatively told that it could do. Because the jury did not receive proper instructions on how to evaluate the evidence, we conclude that the outcome of the proceedings was likely affected by the trial court's failure to give the accomplice-corroboration charge.

Finally,

> [a] trial court's failure to give an accomplice corroboration instruction when a defendant is affirmatively identified

as the second participant and gunman in a murder based *solely* on accomplice testimony undermines the fairness of the proceedings, at least when coupled with the express authorization by the court for the jury to establish critical facts based solely on this testimony.

(Emphasis in original.) *Stanbury*, supra, 299 Ga. at 131 (2). Affirming Doyle's conviction on this record with a jury that was authorized to find him guilty solely on Richardson's testimony would render the accomplice-corroboration requirement meaningless. Consequently, we hold that the trial court plainly erred by failing to give the accomplice-corroboration charge.[5]

3. In light of our holding above, we do not reach Doyle's remaining enumerations of error.

*Judgment reversed. All the Justices concur.*

---

[5] Due to our conclusion that there was sufficient evidence presented at trial to support his convictions, the State may choose to re-try Doyle. We note that our decision today impacts only Doyle. His co-defendant Parks did not challenge the jury instruction in his direct appeal, only the sufficiency of the evidence corroborating Richardson (and there was considerably more corroboration as to Parks). See *Parks v. State*, 302 Ga. 345, 348 (806 SE2d 529) (2017) (in addition to Henderson's report of Parks's confession, other evidence connected Parks to the crime, including cell phone records placing Parks at Midtown Towing around the time of the shooting and Henderson's identification of Parks as the passenger in a blue SUV the night of the shooting). As Parks did not raise the jury-instruction issue, this Court did not consider the question in his case.

DECIDED JANUARY 13, 2020.

Murder. Fulton Superior Court. Before Judge LaGrua.

*Jacob D. Rhein*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Marc A. Mallon, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General*, for appellee.