**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: May 3, 2022

S21C0949, S21G0949.  PALENCIA v. THE STATE.

BETHEL, Justice.

Francisco Palencia was convicted of several offenses arising from a home invasion and sexual assault upon V. M.[1] Palencia appealed his convictions to the Court of Appeals, which affirmed his convictions and found no reversible error. See *Palencia v. State*, 359 Ga. App. 307 (855 SE2d 782) (2021). Palencia filed a petition for a writ of certiorari in this Court arguing that the Court of Appeals

---

[1] Palencia and co-defendants Jose Carranza-Castro, Josue Ramirez-Aguilar, Ana Lopez-Huinil, and Angela Garcia were jointly indicted for attempted first-degree burglary (Count 1), two counts of first-degree burglary (Counts 2 and 3), kidnapping (Count 4), aggravated battery (Count 5), aggravated assault (Count 6), aggravated sodomy (Count 7), rape (Count 8), and two counts of first-degree cruelty to children (Counts 9 and 10). Carranza-Castro, Ramirez-Aguilar, Lopez-Huinil, and Garcia each entered guilty pleas and testified at Palencia's trial in October 2018.

The jury found Palencia guilty of all charges except Count 10, instead finding him guilty of the lesser offense of third-degree cruelty to children. Palencia was sentenced to life in prison plus 111 years.

erred by determining that the trial court did not plainly err by failing to charge the jury on the requirement under OCGA § 24-14-8 that accomplice testimony be corroborated.[2] We hold that the Court of Appeals incorrectly distinguished this Court's binding precedent in reaching its decision. Accordingly, we grant Palencia's petition for certiorari, reverse the pertinent part of the judgment of the Court of Appeals, and remand this case to the Court of Appeals for further consideration consistent with this opinion.[3]

Pertinent to our analysis here, the evidence presented at trial showed the following. Palencia and Josue Ramirez-Aguilar were

---

[2] OCGA § 24-14-8 provides:

The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including prosecutions for treason, prosecutions for perjury, and felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason.

[3] Our rules contemplate that we may grant a petition for certiorari and dispose of the case summarily, without full briefing and oral argument, and we elect to do so here because the issue presented on certiorari would not benefit from further briefing and argument. See *Sanchious v. State*, 309 Ga. 580 (847 SE2d 166) (2020); Supreme Court Rule 50 (3). Palencia brought other claims of error in his appeal before the Court of Appeals, but he has not raised any of those issues in his petition for a writ of certiorari, and we do not address them.

hired by Jose Carranza-Castro to physically beat and disfigure V. M., who was a former love interest of Carranza-Castro with whom Carranza-Castro shared a child.

According to Ramirez-Aguilar, he and Palencia broke into V. M.'s apartment, burglarized it, and waited inside until she returned home. Ana Lopez-Huinil and Angela Garcia were waiting outside during this time. Lopez-Huinil was Palencia's girlfriend, and Garcia was Ramirez-Aguilar's girlfriend. When V. M. entered her apartment with her two young children, Palencia and Ramirez-Aguilar attacked her. Ramirez-Aguilar testified that he threw boiling water on V. M. and that Palencia raped her. Following the attack, Palencia and Ramirez-Aguilar left the apartment.

Both Lopez-Huinil and Garcia testified that Palencia was present during the burglary and attack. Specifically, Lopez-Huinil and Garcia testified that the two of them went with Ramirez-Aguilar and Palencia to V. M.'s apartment earlier that night and that all four of them went inside to steal items when no one was home. They also testified that the four of them went back to V. M.'s apartment

3

again later that night, but that Lopez-Huinil and Garcia waited outside and did not go inside that time. Lopez-Huinil testified that Palencia told her that, during the second trip to the apartment, Ramirez-Aguilar "had sex" with V. M., and Garcia testified that Ramirez-Aguilar told her that Palencia "raped" V. M.

After the attack, police responded to V. M.'s 911 call, and she was transported to a hospital. Medical personnel later performed a sexual assault examination on V. M., the results of which later excluded Palencia and Ramirez-Aguilar from the DNA profiles obtained in the examination.

At trial, V. M. testified that her attackers were wearing ski masks, that she did not know who the attackers were, and that their faces were covered at all times she observed them during the crimes. V. M. also stated that one of the attackers was "tall" and the other was "short," and that the "short guy" asked her to take off her dress and give him oral sex. The evidence showed that Palencia is shorter than Ramirez-Aguilar.

Neither Palencia nor the State requested a charge on

4

accomplice corroboration, and the trial court did not charge the jury on the necessity for corroboration of accomplice testimony. Instead, the trial court instructed the jury only that "the testimony of a single witness, if believed, is sufficient to establish a fact. Generally, there's no legal requirement of corroboration of a witness, provided you find the evidence to be sufficient."

Palencia did not object to the jury charges as given, thus any appellate review of the trial court's instructions is for plain error only. See *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011); OCGA § 17-8-58 (b). As we outlined in *Kelly*, to establish plain error in regard to jury instructions, the appellant must satisfy the following four prongs:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which

5

ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted.) *Kelly*, 290 Ga. at 33 (2) (a).

Palencia argues that under this Court's decision in *Stanbury v. State*, 299 Ga. 125 (786 SE2d 672) (2016), the Court of Appeals erred in its determination that the trial court's failure to give an accomplice-corroboration charge was not a clear and obvious error in light of the evidence presented in this case. We agree that the Court of Appeals erred in this regard.

In *Stanbury*, we held that the failure to give an accomplice-corroboration charge was a clear and obvious error where the trial included purported accomplice testimony but the jury was instructed that facts could be established based on the testimony of a single witness. See *Stanbury*, 299 Ga. at 129-130 (2). As we discussed, "in essence, the jury received an instruction that it could believe the facts as described by [the alleged accomplice] without corroboration — in direct contradiction to [OCGA § 24-14-8]." Id. at

129 (2).[4] Thus, we held that "the trial court's failure to provide a jury charge regarding accomplice corroboration was clear error not subject to reasonable dispute." Id.[5]

From the evidence presented at trial in this case, the jury could find that Ramirez-Aguilar, Lopez-Huinil, and Garcia – all of whom were indicted with Palencia and pled guilty to offenses with which he was also charged – were Palencia's accomplices, who all testified that Palencia burglarized V. M.'s apartment with them. Ramirez-Aguilar identified Palencia as the person who raped V. M., and Lopez-Huinil and Garcia testified that Palencia was inside the apartment when the attack and rape occurred.[6] But in order to credit an accomplice's testimony under Georgia statutory law, the jury had

---

[4] *Stanbury* was decided under former OCGA § 24-4-8. However, as noted in *Stanbury*, the identical language of that rule was carried forward into the current Evidence Code and codified at OCGA § 24-14-8, effective for cases tried as of January 1, 2013. See *Stanbury*, 299 Ga. at 128 (1) n.4.

[5] We have reaffirmed *Stanbury*'s holding on this point in numerous cases. See, e.g., *Pindling v. State*, 311 Ga. 232, 236 (2) (857 SE2d 474) (2021); *Doyle v. State*, 307 Ga. 609, 613-615 (2) (b) (837 SE2d 833) (2020); *State v. Johnson*, 305 Ga. 237, 239-241 (824 SE2d 317) (2019).

[6] Although V. M.'s testimony could be understood to have identified the shorter of her two assailants as the person who raped her and thus suggested that it was Palencia rather than Ramirez-Aguilar who did so, V. M. never identified Palencia as one of the perpetrators.

to find at least slight evidence that was "independent of the accomplice testimony and [that] directly connect[ed] the defendant with the crime, or [led] to the inference that he is guilty." (Citation omitted.) Id. at 128 (1). Even if there was such evidence in the record, the trial court's failure to also charge the jury on the necessity of accomplice corroboration when charging it that the testimony of a single witness is sufficient to establish a fact was clear and obvious error in light of *Stanbury*. See *Stanbury*, 299 Ga. at 130 (2); see also *Doyle v. State*, 307 Ga. 609, 613 (2) (b) (837 SE2d 833) (2020) ("On multiple previous occasions, we have held that giving the single-witness instruction, while failing to give the accomplice-corroboration instruction, in a case where the defendant was directly linked to the crime through the testimony of an accomplice, deviates from the plain language of OCGA § 24-14-8 and constitutes a clear and obvious error."); *State v. Johnson,* 305 Ga. 237, 238 (824 SE2d 317) (2019) (rejecting the State's argument that "an [accomplice-corroboration] instruction . . . is not clearly required where a witness other than the accomplice introduces an

8

accomplice's statement implicating defendant's guilt"); *Hamm v. State*, 294 Ga. 791, 794-797 (2) (756 SE2d 507) (2014) (holding that even if there are multiple corroborating witnesses and other corroborating evidence, it is error for a trial court to fail to give a requested accomplice-corroboration instruction, although the failure to instruct was harmless error).

The State argues that there was overwhelming corroboration and thus that an accomplice-corroboration charge was not required in this case. However, whether there is sufficient (or even overwhelming) corroborating evidence (such as multiple witnesses corroborating an accomplice's testimony) does not affect whether it is error for a trial court to fail to give the instruction when the single witness charge is given. The presence of corroborating evidence could mean that the error in not giving an accomplice-corroboration instruction did not affect the outcome of the trial, but it would not make the instruction unnecessary.[7] See, e.g., *Hawkins v. State*, 304

---

[7] We urge trial courts to carefully scrutinize the source of the evidence presented at trial when preparing jury instructions. When giving the commonly used single-witness charge based on the first sentence of OCGA §

9

Ga. 299, 302-303 (3) (81 SE2d 513) (2018) (citing *Stanbury* and holding that although failure to give accomplice-corroboration charge was clear or obvious error, it did not likely affect the outcome of the trial because "there was significant and consistent evidence outside of the testimony provided by the accomplice to specifically connect [defendant] to [victim's] murder," and therefore no plain error); *Lyman v. State*, 301 Ga. 312, 318-319 (2) (800 SE2d 333) (2017) (failure to give accomplice-corroboration instruction was clear and obvious error where two accomplices affirmatively identified

24-14-8, trial courts should always consider whether an accomplice-corroboration charge is also necessary in light of the evidence presented and the relationship between the defendant and the witnesses who testified at trial. If there is even slight evidence that could support a finding that a witness was an accomplice and that witness provides testimony that links the defendant to the crime, it is error for the trial court to instruct the jury that the testimony of a single witness is sufficient to establish a fact without also instructing the jury that an accomplice's testimony must be corroborated. See *Pindling v. State*, 311 Ga. 232, 235-237 (2) (857 SE2d 474) (2021). See also *Stripling v. State*, 304 Ga. 131, 136 (2) (816 SE2d 663) (2018) ("A jury instruction on the need for accomplice corroboration should be given if there is slight evidence to support the charge." (citation and punctuation omitted)). And "[a]n accomplice is someone who shares a common criminal intent with the actual perpetrator of a crime." (Citation and punctuation omitted.) *Thornton v. State*, 307 Ga. 121, 125 (2) (c) (834 SE2d 814) (2019). We note, however, that defense counsel may not want an accomplice-corroboration instruction for strategic reasons, see, e.g., *Manner v. State*, 302 Ga. 877, 883-884 (II) (A) (808 SE2d 681) (2017), so the trial court should consider whether a defendant wishes to affirmatively waive an instruction that would otherwise be warranted.

appellant as perpetrator, although the error did not probably affect the outcome of the trial).

The Court of Appeals held that *Stanbury* did not apply to this case because

> this victim survived the attack and testified at trial that a man matching Palencia's description raped her. Because the victim was a competent witness as to her own rape, Ramirez-Aguilar was not the only witness to it, and no corroboration of the victim's testimony was necessary.

See *Palencia*, 359 Ga. App. at 311 (3) (a) (citing *Glaze v. State*, 317 Ga. App. 679, 681-682 (1) (732 SE2d 771) (2012) (given the absence of any corroboration requirement in the rape statute, a victim's testimony that she was raped by someone matching the defendant's description was sufficient to sustain the rape conviction), and *Baker v. State*, 245 Ga. 657, 665-666 (5) (266 SE2d 477) (1980) (noting the General Assembly's 1978 removal of the corroboration requirement from the rape statute, OCGA § 16-6-1)).

This analysis by the Court of Appeals is flawed. It is true that corroboration of a rape victim's testimony is not required by OCGA § 16-6-1. But that does not resolve the question with respect to

11

accomplice-liability corroboration. As noted above, because the jury could find that Ramirez-Aguilar, Lopez-Huinil, and Garcia were Palencia's accomplices, their identifications of Palencia as a perpetrator of the crimes, to the extent any one of them was credited by the jury to be an accomplice, required corroboration in order to form the basis of a conviction. The Court of Appeals's reliance on *Glaze* for its holding is misplaced because that case did not concern the requirement for accomplice corroboration under OCGA § 24-14-8 (or its predecessor, former OCGA § 24-4-8), but instead concerned the sufficiency of a rape victim's testimony to support the conviction given the absence of any corroboration requirement in the rape statute, OCGA § 16-6-1.

This case is clearly governed by *Stanbury* and similar cases. Because the Court of Appeals erred in its conclusion that the holding in *Stanbury* did not govern this case, we reverse the portion of the Court of Appeals opinion that held otherwise. See *Palencia*, 359 Ga. at 311 (3) (a). On remand, the Court of Appeals should consider whether Palencia has satisfied the remaining prongs of the plain-

error test, see *Kelly*, 290 Ga. at 33 (2) (a), a question on which we express no opinion.

*Petition for writ of certiorari granted, judgment reversed in part, and case remanded with direction. All the Justices concur, except Colvin, J., disqualified.*