**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 13, 2022**

# In the Court of Appeals of Georgia

A22A0491. BRONNER v. THE STATE.

BROWN, Judge.

Following a joint trial with two other defendants, Jatarious Bronner appeals from his aggravated assault conviction. He contends that insufficient evidence supports his conviction, that the trial court committed plain error when it failed to issue a curative instruction during the State's closing argument, and that it applied the wrong legal standard to his motion for new trial on the general grounds. For the reasons explained below, we reverse.

On appeal from a criminal conviction, the standard for reviewing the sufficiency of the evidence

is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. . . . This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.

(Citations and punctuation omitted.) *Hayes v. State*, 292 Ga. 506 (739 SE2d 313) (2013). So viewed, the record shows that on September 15, 2008, the victim was talking on the telephone with a friend when the friend heard a knock on the victim's door. The friend heard the victim ask who was there and a girl say Brittany. After the victim said that he did not know a Brittany, his friend heard him say, "You can have whatever you want. Just don't shoot." He did not answer as his friend called his name. The friend then heard "a thud" and the victim say, "Oh man. That's fucked up." The friend could not tell from the sounds she heard whether one or more people came to the victim's apartment. The last thing the friend heard in the call was the sound of "scruffling and furniture moving." While she was on the phone with the victim, the friend asked her brother to bring another phone to call 911.

A patrol officer was dispatched to the victim's apartment around 10:51 p.m. on September 15, 2008, where she discovered that the victim was deceased, lying just inside the open apartment door. A pathologist who performed an autopsy on the

2

victim testified that the victim died from a single gunshot wound that traveled into the left side of his chest, through his left lung and spine, and out the right, upper back. Based on gun powder stippling around the entrance wound, the end of the gun barrel firing the fatal shot was between one inch and four feet away from the victim. He also had a small scrape and a second scrape or possible bruise on his face, along with scrape injuries on his elbow and knees. The pathologist testified that the facial injuries could have occurred during the incident in which he was shot as there was no obvious evidence of healing.

During the police examination of the scene, they discovered two shell casings and a spent bullet near the couch inside the apartment. An officer testified that at least two shots were fired, one of which occurred near the stairwell leading to and the porch outside the apartment door. The police were unable to locate the second bullet that went through the roof of the apartment. Drawers and cabinet doors in the bedroom were opened and/or overturned.

The State's case against the three defendants was premised solely on the testimony of Shyquandria Williams, whom they identified and interviewed based upon on a tip they received a year later. She testified that on the evening the victim died, she rode with Bronner and Willie Caldwell in car driven by Theojuana

McCullar[1] to Albany after they had no luck finding marijuana in Dawson. After trying a couple of apartments in Albany, they went to the victim's house. At Caldwell's suggestion, Williams went to the door; Caldwell believed that the victim would come to the door for a female. McCullar stayed in the car. Williams testified that when she knocked on the door, Caldwell "was on the side" of her. When the victim asked who was at the door, Williams stated she was there to purchase weed. As the victim "was opening the door," Caldwell shoved Williams out of the way. After she was pushed to the side, Williams left.

As Williams walked down a short set of stairs that led away from the door of the apartment, she heard a single gunshot and started running toward the car. When she heard the shot, she was not sure whether Bronner was inside the apartment. She got into the car with McCullar, who then drove away. They drove down the road before doing a U-turn to pick up the two men. While she did not see Bronner go into the apartment, she saw him "come out" of it with Caldwell. Neither Caldwell nor Bronner were inside the apartment very long. Williams could not remember if Bronner went to the door with her and Caldwell, or if he came "after." After the two men came out of the apartment, the group returned to Dawson and smoked marijuana;

[1] McCullar is Caldwell's sister.

the amount of marijuana they smoked was more than what they could have purchased with the money on hand before they went to the victim's apartment. The next morning, Williams heard about the victim's death and saw "them bringing his body out of the apartment" on the news. She testified that this was the same apartment she had been to the day before.

The State played for the jury a recorded statement Williams gave to the police about one year after the victim's death. In it, Williams initially denied any knowledge of the circumstances surrounding the victim's death. Later, she acknowledged that she heard Caldwell and McCullar talk about going to get weed from the victim and Caldwell stating that he shot the victim after the victim shot at him. Next, she admitted being present, but claimed she had stayed in the car with McCullar. Finally, she admitted to a version of events similar to what she testified to at trial. She stated that Caldwell asked her to go to the door, but asserted that she did not know he had a gun or what he intended to do.

Bronner was indicted and tried jointly with Caldwell and McCullar. The State charged all three with felony murder, as well as one count of aggravated assault committed with the intention to rob.[2] The jury found Caldwell guilty of felony murder

---

[2] The State charged only Caldwell with a second count of aggravated assault.

and two counts of aggravated assault; it concluded that Bronner and McCullar were guilty of aggravated assault, but not felony murder.

1. Bronner contends that insufficient evidence supports his conviction because the State's case rested entirely on the uncorroborated testimony of an accomplice.

> Georgia law requires corroboration in felony cases where the only witness testifying to the defendant's participation in the crime is an accomplice. . . . The corroborating evidence may be circumstantial and slight, and need not be sufficient in and of itself to warrant a conviction, so long as it is independent of the accomplice's testimony and directly connects the defendant to the crime or leads to the inference of guilt.

(Citations and punctuation omitted.) *Doyle v. State*, 307 Ga. 609, 611 (1) (837 SE2d 833) (2020).

> The independent evidence must corroborate both the identity of the defendant and the fact of his participation in the crime. In other words, corroboration of only the chronology and details of the crimes is not sufficient, and there must be some independent evidence tending to show that the defendant himself was a participant in the crimes.

(Citations and punctuation omitted.) *Montanez v. State*, 311 Ga. 843, 849 (1) (b) (860 SE2d 551) (2021). But, if the evidence introduced at trial "would have authorized a properly instructed jury to find that a witness was *not* an accomplice, that finding

would eliminate the need for corroboration under OCGA § 24-14-8." (Emphasis in original.) *Johnson v. State*, 311 Ga. 221, 223-225 (857 SE2d 463) (2021) (finding jury was authorized to conclude that witness "had no knowledge that [defendant] intended to shoot [victim], did not share [defendant]'s criminal intent to do so, fled the scene out of fear and surprise, and thus was not an accomplice," despite some evidence to the contrary).

In this case, the trial court instructed the jury on the requirement for corroboration of an accomplice's testimony. As the Supreme Court of Georgia recently held in an appeal filed by Caldwell, the evidence presented in their joint trial authorized the jury to conclude that no corroboration was required because Williams was not an accomplice. *Caldwell v. State*, Ga. (1) (Case No. S22A0229, decided May 3, 2022). Accordingly, we find no merit in Bronner's claim that insufficient evidence supports his conviction.

2. Bronner contends that the trial court committed plain error by failing to give a curative instruction after the State made improper and inaccurate statements in its closing argument regarding its authority to determine that Williams was not an accomplice. In *Caldwell*, the Supreme Court of Georgia concluded that the request for a curative instruction made by Bronner's counsel, in which Caldwell's attorney

7

joined, was "sufficient to preserve the issue for ordinary appellate review." Ga. at (2), n.8. Accordingly, we will apply the same standard of review as the Supreme Court of Georgia, namely whether the State fulfilled its burden of showing "that it was highly probably that the error did not contribute to the verdict." (Citation and punctuation omitted.) Id. at (2).

When considering the same issue now before this Court, the Supreme Court of Georgia considered the statements made by the State in its closing argument and found:

> Knowing that no evidence would corroborate Williams'[ ] testimony if she were found to be an accomplice, and that the trial court had in fact concluded that there was no corroborating evidence before denying Caldwell's motion for a directed verdict, the District Attorney argued in closing that regardless of the evidence in the record, the District Attorney was the sole arbiter of whether Williams could be indicted and that she was not indicted because he made that determination, implying based on the jury instruction that she could not be an accomplice. The prejudicial nature of these statements was compounded by the District Attorney's assertion of authority over that of the trial court. Even though the trial court subsequently instructed the jury that [the jury] was to determine whether Williams was an accomplice, the trial court also told the jury that whether a witness is an accomplice is based on whether she could be indicted for the same crimes. The District Attorney's arguments suggested to the jury that

8

because of the District Attorney's authority, the decision about whether to indict (and consequently whether Williams was an accomplice) had already been made, so the jury did not have to make that determination, and the trial court's subsequent charge to the jury can be reasonably construed as reinforcing that argument.

For these reasons, we conclude that the State has not carried its burden of showing that it is highly probably that the District Attorney's uncorrected argument did not contribute to the verdict. The only way for the jury to properly find Caldwell guilty, given the lack of corroborating evidence, was to find that Williams was not an accomplice, and we cannot say that it is highly probable that the District Attorney's argument did not contribute to that finding. Thus, we conclude that the failure to provide a curative instruction was harmful error, and we must reverse Caldwell's convictions.

*Caldwell*, Ga. at (2). As the prejudice to Bronner is identical to that suffered by Caldwell, we conclude that his conviction also must be reversed. "Because the evidence was legally sufficient to support [Bronner]'s conviction[ ], he may be retried if the State so chooses." *Finney v. State*, 311 Ga. 1, 18 (3) (b), n.30 (855 SE2d 578) (2021).

3. Based on our holding in Division 2, we need not address Bronner's contention that his conviction should be reversed because the trial court failed to

exercise its authority under OCGA §§ 5-5-20 and 5-5-21 ("[the] general grounds")

to grant him a new trial.

*Judgment reversed. Barnes, P. J., and Hodges, J., concur*.