**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

**August 30, 2022**

# In the Court of Appeals of Georgia

A22A0867, A22A0868. DURHAM v. THE STATE.

DOYLE, Presiding Judge.

Following a consolidated trial on two indictments, Jason Lee Durham appeals his convictions for two counts of possession of methamphetamine and possession of an illegal weapon.[1] Durham argues that the trial court plainly erred by failing to instruct the jury as to accomplice testimony. For the reasons that follow, we reverse.

Viewed in the light most favorable to the verdict,[2] the record shows that Durham moved into the home of his then girlfriend, Brieanna Foster, in late 2015, and

---

[1] The State dismissed a theft charge and a charge for possession of a schedule IV substance, and the trial court directed a verdict of acquittal as to a second theft charge.

[2] See, e.g., *Hawkins v. State*, 304 Ga. 299, 300 (1) (818 SE2d 513) (2018).

the two used methamphetamine together almost daily. In December 2016, officers arrived at the home to gather information based on a report they received from the drug task force. Foster and her children were preparing for a funeral, and Durham was elsewhere on the property, possibly hunting or riding his four wheeler. After gaining Foster's consent, the officers searched the property, finding digital scales with suspected methamphetamine residue, ownership of which Foster claimed. Foster was arrested for possession of methamphetamine, which the officers found in an outbuilding of the property where she testified that the pair frequently used the drug. In addition to the methamphetamine, officers discovered a sawed-off shotgun, which Foster testified belonged to Durham. Foster was frustrated that Durham did not come back to the property while police were there arresting her, and she testified that he believed she had called the police on him.

Near the end of January 2017, officers again came to Foster's residence to serve a warrant on Durham, who along with Foster and another man, had been using methamphetamine the previous night. Officers escorted Foster and one of her children out of the house before searching for Durham, who was in the basement. Foster testified that Durham was checking for a leak under the bathroom, but an officer testified that Durham repeatedly refused to come out after being called by officers.

Foster was arrested again in May 2017, at which time she stayed in jail for approximately five months and entered a drug rehabilitation program for her methamphetamine use. Foster was charged with many of the same crimes as Durham in the instant cases,[3] and she pleaded guilty to one charge of possessing methamphetamine and had other charges nolle prossed the day before trial, receiving probation and agreeing to testify against Durham.

An officer from the drug task force testified that in December 2016, the office received an anonymous call regarding drug activity and a possible stolen car at the home, which prompted them to visit the house, where Foster consented to the search. The officer testified that there were multiple items of drug paraphernalia found around the home in December, and some of it was discovered in Durham's car and with his personal paperwork.

At the close of evidence, the trial court instructed the jury that the testimony of a single witness was sufficient to support a finding, but the jury was not instructed as to the necessity of corroboration of a witness's testimony if the witness was also a co-conspirator, OCGA § 24-14-8. The trial court also instructed the jury on the law

---

[3] Foster's indictments do not include a charge for possession of the sawed-off shotgun.

of constructive possession and joint possession. The jury found Durham guilty of two counts of possession of methamphetamine and one count of possession of an illegal weapon, and the court sentenced Durham to probation. Durham then filed a motion for new trial, which he later amended, and the trial court denied the motion, finding, inter alia, that no plain error occurred when it failed to give the accomplice testimony instruction. Durham appeals, presenting the same argument to this Court.

"In most instances, the testimony of a single witness is sufficient to establish a fact under Georgia law. But that is not so in 'felony cases where the only witness is an accomplice.'"[4]

> [Durham] did not object to the jury charges as given; thus any appellate review of the trial court's instructions is for plain error only. . . . [T]o establish plain error in regard to jury instructions, the appellant must satisfy the following four prongs: First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he

---

[4] (Citation omitted.) *Lewis v. State*, 311 Ga. 650, 665 (4) (859 SE2d 1) (2021). See also *State v. Johnson*, 305 Ga. 237, 240 (824 SE2d 317) (2019), citing OCGA § 24-14-8; *Stanbury v. State*, 299 Ga. 125, 129-130 (2) (786 SE2d 672) (2016); *Burns v. State*, 342 Ga. App. 379, 383 (1) (803 SE2d 79) (2017).

must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[5]

"An accomplice is someone who shares a common criminal intent with the actual perpetrator of a crime."[6] Because Foster was a testifying codefendant of Durham, it was erroneous for the trial court to omit the accomplice testimony instruction in light of the fact that it also instructed the jury that the testimony of a single witness was sufficient to support a fact.[7]

By failing to give the required accomplice corroboration charge, the trial court impermissibly empowered the jury to find [Durham] guilty based

---

[5] (Punctuation and citations omitted.) *Palencia v. State*, 313 Ga. 625, 627 (872 SE2d 681) (2022), quoting *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011), and citing OCGA § 17-8-58 (b).

[6] *Stripling v. State*, 304 Ga. 131, 136 (2) (816 SE2d 663) (2018), citing *Williams v. State*, 289 Ga. 672, 673 (715 SE2d 76) (2011).

[7] See *Palencia*, 313 Ga. at 629-630 (explaining that even if there was independent corroborating evidence of the defendant, "the trial court's failure to also charge the jury on the necessity of accomplice corroboration when charging it that the testimony of a single witness is sufficient to establish a fact was clear and obvious error"), collecting cases including, *Doyle v. State*, 307 Ga. 609, 613 (2) (b) (837 SE2d 833) (2020); *Johnson*, 305 Ga. at 238; *Stanbury*, 299 Ga. at 130 (2); *Hamm v. State*, 294 Ga. 791, 794-797 (2) (756 SE2d 507) (2014).

solely on [Foster]'s accomplice testimony. The jury, as the sole arbiter of credibility, was not properly instructed on the manner in which it needed to judge the evidence. As a consequence, because virtually all of the incriminating evidence flowed from [Foster], the outcome of the trial court proceedings was 'likely affected' by the trial court's failure to provide an accomplice corroboration charge to the jury, and a proper instruction would likely have resulted in a different verdict. [8]

Durham argues that all the evidence of his guilt flowed from Foster, and we agree.[9] Although Durham lived at the residence and co-owned one of the vehicles in which methamphetamine was discovered,[10] he was not at the property during the initial search. Moreover, the only evidence of Durham's possession of the shotgun was Foster's testimony. It is true that Durham had access and control to the contraband as a resident of the house and that his behavior when officers attempted to serve the warrant supports a finding of guilt,[11] and such evidence establishes that

---

[8] (Citations and punctuation omitted.) *Johnson*, 305 Ga. at 240-241.

[9] See id. at 241.

[10] *Dickerson*, 312 Ga. App. 320, 322 (1) (718 SE2d 564) (2011), quoting *Daugherty v. State*, 283 Ga. App. 664, 667 (1) (b) (642 SE2d 345) (2007).

[11] See *Harris v. State*, 313 Ga. 225, 231 (3) (869 SE2d 461) (2022) ("the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt"), quoting *United States v. Borders*, 693 F2d 1318, 1324 (II)

6

there was sufficient corroboration to support a guilty verdict had the appropriate jury

instructions been provided. Under

> these circumstances, [however,] if a conviction could be affirmed in spite of the trial court erroneously providing a witness testimony instruction wholly opposite to an accomplice corroboration charge, an accused would have no way of knowing whether the jury secured his conviction through permissible means. In effect, laws and jury charges requiring accomplice corroboration would be meaningless.[12]

Accordingly, the trial court erred by denying the motion for new trial as to this

issue.

---

(11th Cir. 1982); *Parks v. State*, 304 Ga. 313, 315 (1) (a) (818 SE2d 502) (2018) ("mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may be inferred from presence, companionship, and conduct before, during, and after the offense") (citations and punctuation omitted); *Sims v. State*, 306 Ga. App. 68, 70 (1) (701 SE2d 534) (2010) (same).

[12] (Punctuation omitted.) *Johnson*, 305 Ga. at 241, quoting *Stanbury*, 299 Ga. at 131 (2). See also *Doyle*, 307 Ga. at 613-614 (3) (b) (reversing for failure to give accomplice testimony instruction because accomplice testified to defendant's involvement in a robbery). Compare *Hamm*, 294 Ga. at 797-798 (2) (holding that although it was erroneous for the trial court to omit the accomplice testimony instruction, reversal was not required because it was unlikely the verdict would have been different); *Dickerson*, 312 Ga. App. at 321 (1), 323 (3) (b) (holding that it was unlikely that the failure to give the accomplice testimony instruction was harmful error because of the evidence of equal access to the contraband).

*Judgments reversed. Reese, J., and Senior Appellate Judge Herbert E. Phipps concur.*